UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**IN RE:**

DIKA-LAKEVIEW, LLC, an Illinois limited
liability company,

                  Debtor/Debtor-in-Possession.

_____/

Bankruptcy Case No. 10-20738
Hon. Eugene R. Wedoff

Chapter 11

## FOURTH ORDER AUTHORIZING USE OF CASH COLLATERAL

This Court having reviewed the stipulation of the parties and the Court being advised in the premises, and the Court being further advised that the Debtor and Lender stipulate to the following, which are hereby adopted as the findings of the Court:

a.      On May 6, 2010 (the "Petition Date"), DIKA-Lakeview L.L.C. (the "Debtor") commenced this case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is operating its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

b.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(M).

c.      The Debtor owns and operates a nine (9) unit retail shopping center in the City of Naperville (the "Project") commonly known as 1767 West Ogden Avenue, Naperville, Illinois (the "Property").

d.      On August 3, 2010, the Court entered an Order Granting Motion of Wells Fargo Bank, N.A., as Trustee for Single Asset Real Estate Determination determining that the assets of

the Debtor constitute "single asset real estate" as that term is defined by § 101(51B) of the Bankruptcy Code. The Debtor is subject to § 362(d)(3) of the Bankruptcy Code.

e.       The Lender asserts the Debtor is obligated pursuant to that certain *Promissory Note* (the "Note") dated as of July 13, 2004, in the original principal amount of $4,840,000 (the "Loan"), to Wells Fargo Bank, N.A., as Trustee for the registered holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates, Series 2004-C3, by and through CWCapital Asset Management LLC, a Massachusetts limited liability company, in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement, dated as of July 1, 2004 ("Lender") who is the current mortgagor under the terms of that certain *Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* dated as of July 13, 2004 and recorded July 20, 2004 as DuPage County Recorder's Document No. R2004-195171 (the "Mortgage"); and is the current assignor under the terms of that certain *Assignment of Leases and Rents* dated as of July 13, 2004 and recorded July 20, 2004 as DuPage County Recorder's Document No. R2004-195172 (the "Assignment of Rents"); and that certain *Loan Agreement* dated July 13, 2004 (the "Loan Agreement", and collectively with all other documents executed in connection with the Loan, the "Loan Documents") together with a *Joinder* dated July 13, 2004 executed by Marshall N. Dickler and Larry P. Kanar (each a "Guarantor" and collectively the "Guarantors").

f.       The Lender asserts the Debtor is in default under the terms of the Loan Documents for, among other defaults, the Debtor's failure to make any payments due on the Loan from October 1, 2009 to the present.

g.       The Lender asserts that its claims asserted against the Debtor are guaranteed by the Guarantors as provided by the Loan Documents.

h.     The Lender asserts the Assignment of Rents includes by its terms an assignment to the Lender of all rents and leases and grants to the Lender a security interest in all of that mortgagor's then owned and after acquired personal property, including goods, equipment, fixtures, inventory, accounts receivable, deposit accounts, contract rights, licenses, general intangibles, trade names, trademarks, prepaid insurance premiums, all funds deposited with the Lender or any of their affiliated banks, and all proceeds and products of the foregoing, as security for the claims secured by the Mortgage.

i.     The Lender asserts it filed a Uniform Commercial Code financing statement with the Illinois Secretary of State to perfect its first-priority security interest in the Debtor's personal property granted by the Mortgage and Assignment of Rents.

j.     The Lender asserts it filed a Uniform Commercial Code Fixture Filing with the DuPage County Recorder to perfect its security interest in Debtor's fixtures on the Property granted by the Mortgage and Assignment of Rents.

k.     No other person is known or believed to hold or claim a lien, security interest, or mortgage in the cash collateral that secures the Lender's claims except for ad valorem property taxes.

l.     As a consequence of the foregoing, the Lender claims a first-priority security interest in all the Debtor's cash collateral in existence on the Petition Date, all rents and profits from the Debtor's real property generated before or after the Petition Date, and all proceeds and product, whenever received, of the personal and real property securing the Lender's claims against the Debtor (the "Cash Collateral"), which Cash Collateral is "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code subject to the Debtor's rights to object. The Debtor does not have and is not expected to acquire any cash, negotiable instruments, documents of title,

securities, deposit accounts, or other cash equivalents that are not Cash Collateral subject to the Lender's first-priority security interest.

m.      The Lender asserts that each of the Loan Documents has been validly authorized, executed and delivered by the Debtor and that, except to the extent, if any, they are expressly modified by this order, the Lender's claims against the Debtor are valid and enforceable.

n.      The Lender asserts that as of the Petition Date, the amount of the Lender's claims against the Debtor exceeds the value of the property of the estate securing such claims.

o.      The Lender's assertions described in Paragraphs e, f, g, h, i, j, l, m and n are stipulations not agreed to by the Debtor based on the Debtor's written objections to the Lender's Proof of Claim. A hearing on the Debtor's objections is scheduled for January 26, 2011.

p.      On or about April 23, 2010, the Lender commenced a judicial foreclosure action in DuPage County Circuit Court.

q.      A Motion to Appoint a Receiver over the Property was scheduled for May 7, 2010 and was stayed by the filing of this bankruptcy case.

r.      The Debtor has requested authorization to use Cash Collateral received from the operation of the Property to pay expenses during the Cash Collateral Period (as defined below). The Debtor contends that the permission granted hereunder is necessary to avoid irreparable harm to the Project and the bankruptcy estate.

s.      In recognition of their mutual interests, the Debtor and the Lender have agreed to permit the use of Cash Collateral during the Cash Collateral Period on the terms and conditions stated in this Order and the Court finds that entry of this Order is in the best interests of the Debtor, the bankruptcy estate and the creditors.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED**

**Term**

1.     The Debtor is authorized to use Cash Collateral, subject to the terms and conditions set forth in this Order, but the Debtor's use of Cash Collateral under this Order shall expire upon the earlier of (1) an event of default, (2) entry of a further order by the Court regarding the use of Cash Collateral[1] or (3) March 31, 2011 (the "Cash Collateral Period").

**Limitation on Use**

2.     Debtor may use Cash Collateral to pay the actual, ordinary, necessary and reasonable Property operating expenses in accordance with the operating budget, a copy of which is attached hereto as **Exhibit A** (the "Operating Budget") in the amounts necessary or appropriate for the ordinary operation of the Property.

3.     In no event shall Cash Collateral be used to pay any prepetition debts or obligations of the Debtor, and, further, unless the Lender otherwise agrees in writing or as authorized by further order of the Court, in no event shall Cash Collateral be applied or available to pay any administrative expenses of the types specified in § 503(b)(2), (3), (4), (5) or (6) of the Bankruptcy Code, or costs and expenses of the type specified in § 506(c) of the Bankruptcy Code; provided, however, that nothing in this paragraph shall prevent the Debtor from paying quarterly fees to the United States Trustee.

---

[1]     In addition to an Order specifically addressing the use of the Cash Collateral, such an Order would include an Order confirming a Chapter 11 plan, an Order converting this case to a Chapter 7 case, or an Order dismissing this case.

**Budget**

4.     The Operating Budget may provide for payment of a management fee in an amount not to exceed 3.0% (percent) of rents collected.

5.     The Operating Budget may provide for the payment of reasonable professional fees for ordinary and necessary operations of the Project such as customary tenant evictions. No payments from Cash Collateral shall be made to Debtor's bankruptcy counsel, appraisers, expert witnesses or other professionals for purposes related to this case without consent of Lender or court order.

6.     The Debtor shall submit to the Lender, on or before the fifteenth (15th) day of each month a detailed report, in a form reasonably satisfactory to the Lender, on the sources and uses of Cash Collateral received and monies disbursed by the Debtor during the previous calendar month (the "Monthly Accounting"), and the Monthly Accounting shall be certified as correct by the Debtor to the best of its knowledge and shall include information regarding actual receipts and disbursements which provide in reasonable detail an explanation of any material variance in the budgeted disbursements during said calendar month; in addition, upon request from the Lender, the Debtor shall provide information to the Lender in reasonable detail explaining any variance in the actual receipts and disbursements from the budgeted disbursements during the calendar month.

**Cash Management**

7.     All funds not used in the payment of budgeted monthly expenses shall remain in the DIP Account.

8.     The rents and profits of the Debtor shall be kept separate and apart from the rents and profits of any other project and comingling of funds is strictly prohibited.

**Reporting Requirements**

9.     The Debtor shall provide Lender with its regular monthly "Management Reports," as well as monthly profit/loss statements and balance sheets, rental income reports, expense summaries, and such other financial documents as are required by the terms of the Loan Documents, so long as the Lender provides the Debtor with an acceptable form, or may reasonably requested by Lender from the Debtor, within ten (10) days of the last business day of the month reported.  Debtor will also provide Lender with copies any reports required to be filed with the U.S. Trustee's office or the Bankruptcy Court.

10.     The Debtor shall allow the Lender full access to all books and records pertaining to the Property and shall provide to the Lender such information and documents pertaining to the Property as the Lender shall reasonably request upon reasonable notice, which right shall include the right of the Lender to access to the Property and the records of the Property for the purposes of independent appraisals, audits and financial and collateral reviews and inspections.

11.     The Debtor shall promptly upon request execute and deliver or otherwise provide as reasonably requested such further documents and provide assurances as the Lender may reasonably require in connection with the matters discussed herein, and the Debtor shall promptly provide such further documents, reports, certificates and other writings as the Lender may require to further the purposes of this Order, all of which shall be in form and substance satisfactory to the Lender.

**Impound and Reserve Accounts**

12.     To the extent that there are any impound or other reserve account established under the Loan Documents (the "Impound and Reserve Accounts"), neither the Debtor nor any other person or entity claiming by, through or under the Debtor shall have any control over the

use of, or any right to withdraw any amount from the Impound and Reserve Accounts without prior written approval from the Lender or further order of the Court.

**Collection of Rents**

13.    That the Debtor shall continue to collect by itself, or through its agent(s), all rents and fees, charges, accounts or other payments for the use or occupancy of the Property (collectively, the "Rents") payable on or after the date hereof, or paid in advance for periods on or after the date hereof subject to the provisions of this Order, and all interest earned on the Escrow Accounts shall remain in the accounts and become part of the Lender's Cash Collateral to the extent of the validity of its liens.

**Interest**

14.    All interest earned on the DIP Account described herein shall be reported as income to the Debtor's Federal Tax I.D. Number and any fees or charges of the depository bank in connection with the DIP Account shall be paid by the Debtor from the Cash Collateral or with earnings credits.

**Insurance**

15.    The Debtor shall maintain and keep in full force and effect all insurance, endorsements and coverage for the Property (as defined in the Loan Documents) as the Lender may reasonably require to protect the Lender's interest in the Property, in accordance with the insurance required by the Loan Documents executed by the Debtor and shall provide the Lender with satisfactory evidence that all such insurance coverage is in full force and effect.

**Lender's Pre-Petition Position**

16.    Except as otherwise set forth herein, this Order shall preclude the Debtor and all other parties in interest from any challenge to the legality, validity, enforceability or perfection of

the Lender's Pre-Petition Indebtedness or the legality, validity, enforceability or perfection of the

Lender's security interests in and liens on the Collateral. However, the Debtor has thirty (30)

days from the date of the filing of Lender's Proof of Claim to file written objections to challenge

the legality, validity, enforceability or perfection of the Lender's Pre-Petition Indebtedness or the

legality, validity, enforceability or perfection of the Lender's security interests in and liens on the

Collateral.

**Adequate Protection**

17.    Notwithstanding the provisions of § 552(a) of the Bankruptcy Code and in

addition to the Lender's existing prepetition liens and security interests, which shall continue in

full force and effect in the same order of priority as existed prior to the Petition Date, the Lender

is hereby granted, pursuant to §§ 361 and 364 of the Bankruptcy Code, a continuing first priority

security interest, to the extent and validity thereof, in and lien upon (the "Replacement Lien") all

tangible and intangible real and personal property acquired, generated or received by the Debtor

after the Petition Date including but not limited to all inventory, furniture, equipment, goods,

chattel paper, instruments, contracts, contract rights, leases, rents, escrows, income, profits,

fixtures, interests in real property and any improvements thereon, general intangibles and all cash

and non-cash proceeds and products of the foregoing, but excluding all causes of action under

Chapter 5 of the Bankruptcy Code and excluding assets acquired after confirmation of a Chapter

11 plan (unless such plan provides for the lien to attach to assets acquired post-confirmation);

provided, however, that the Replacement Lien is limited (i) to the extent that the Lender

possesses a valid enforceable lien on pre-petition Cash Collateral, (ii) to the extent of any

diminution in the Lender's secured position resulting from the use of Cash Collateral, and (iii) in

that it shall be subordinate to the compensation and expense reimbursement allowed to any trustee hereafter appointed in this case.

18.    The security interests and liens created herein and confirmed hereby shall be valid, enforceable and perfected without any further action by the Lender or the necessity of any filing or execution of documents which might otherwise be required under non-bankruptcy law, and upon reasonable request by the Lender, the Debtor shall execute and deliver to the Lender such financing statements and other documents as shall be reasonably required by the Lender.

**General Provisions**

19.    The Debtor agrees that this Order is not intended nor shall it be construed as a waiver or limitation in any way by the Lender or the Debtor of any rights or remedies under the Bankruptcy Code or other applicable law which they may have, including without limitation, the Lender's right to a lifting of the automatic stay under § 362 of the Bankruptcy Code or to adequate protection, and nothing contained herein shall be, nor shall be construed as, an indication that the Lender is adequately protected or that the Debtor waives its right to contend that the Lender is adequately protected, nor shall this Order limit the Debtor's right to request use of Cash Collateral in the future.

20.    This Order shall not be construed as a waiver, concession or admission by the Lender or a waiver of any defenses of the Debtor thereto, that the Debtor has an interest in any property in which the Debtor asserts an interest; and, further, this Order shall not operate to preclude or estop the Lender from contending, among other things, that any property in which the Debtor may assert an interest (including property addressed by this Order) is not property of the bankruptcy estate, and, further, nothing in this Order shall be construed as a wavier of the Lender's right to pursue collection of default interest, late fees and any other costs and expenses

provided for by the Loan Documents; and further, nothing in this Order shall be construed as a waiver of any claims that the Lender may have against the Guarantors or third parties.

21.    The Debtor shall not transfer assets, in bulk or otherwise, outside that of the ordinary course of its business without an order of the Court.

22.    The Debtor shall not create, permit, assume or suffer to exist any lien or security interest, in favor of any person or entity other than the Lender, on any property of the Debtor, except any liens that existed prior to the Petition Date, unless the Lender consents to such creation or assumption in advance in writing or unless the Court authorizes any such lien.

23.    This Order is not intended to cause and shall not cause a novation of any of the Debtor's or any third party's or any guarantor's obligations to the Lender, nor shall it extinguish, affect or impair the Debtor's or any third party's or any guarantor's obligations to the Lender, nor shall this Order release, terminate or limit the priority of any security interests and liens held by the Lender in any assets of the Debtor or any third party.

24.    Nothing contained in this Order shall waive, release or modify in any manner the obligations or defenses of other third-party obligors or guarantors of the indebtedness of the Debtor and its affiliates, if any, to the Lender.

25.    Nothing contained in this Order shall waive, preclude or restrict the Lender from seeking an order terminating the Debtor's management company, appointing a receiver or appointing a trustee or precludes any defenses of the Debtor thereto.

26.    The provisions of this Order, as well as the liens and security interests granted pursuant to this Order shall continue in this or any superseding case under the United States Bankruptcy Code, and such liens and security interests shall maintain their priority as provided by this Order until all indebtedness they secure is satisfied and discharged.

27.    This Order integrates all of the terms and conditions mentioned herein or incidental thereto, and supersedes all prior negotiations whether written  or oral, and prior writings with respect to the subject matter hereof (with exceptions of the Loan Documents).

28.    The automatic stay is deemed vacated to the extent necessary to implement this Order.

**Termination**

29.    A termination event under this Order shall occur upon any of the following:

    (a)    The reversal, revocation, or recission of this Order.

    (b)    The Debtor paying any pre-petition claims without Court or Lender authorization.

    (c)    The failure of the Debtor to keep separate the income and expenses of the Debtor.

    (d)    The Debtor's use of Cash Collateral for items not authorized in the Operating Budget attached as **Exhibit A** to this Order; except that the Debtor may exceed line items not in excess of 10% in the said Operating Budget and any weekly expense can be paid at any time during that month.

    (e)    The Debtor's failure to comply with the provisions of this Order (each a "Termination Event" and collectively "Termination Events".

30.    Upon the failure of the Debtor to perform in accordance with the terms and conditions of this Order, the Lender may notify in writing or e-mail counsel for the Debtor of the occurrence of a Termination Event, reciting the applicable Termination Event and if the same shall not be cured within five (5) business days of such notice, the Lender shall be entitled to file

a Notice of Default, along with an order suspending any existing cash collateral order then in place. If the Termination Event is not subject to cure, the Lender shall be entitled to immediately file a Notice of Default. Once a Notice of Default is filed, the Debtor shall immediately cease using the Cash Collateral, subject to the right, if any, of the Debtor to seek emergency relief from the Court.

31.     The Debtor's use of Cash Collateral pursuant to this Order shall remain in effect unless and until the entry of a further Order upon the use of Cash Collateral, or confirmation of a Chapter 11 plan in this case, or the conversion of this case to Chapter 7, or the dismissal of this case.

**Final Order**

32.     There shall be a further hearing regarding the Debtor's continued use of cash collateral held before the Honorable Eugene R. Wedoff, United States Bankruptcy Judge, in room 744 of the United States Bankruptcy Court in the Everest McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, on the 30th of March, 2011 at ten o'clock a.m.

Entered:     _____
Honorable Eugene R. Wedoff

JAN 1 9 2011

## EXHIBIT A

**Operating Budget**

Lakeview Square Shopping Center
Statement of Cash Flow and Expenses

| | 1/1/2011 | 1/8/2011 | 1/15/2011 | 1/22/2011 | 1/29/2011 | 2/5/2011 | 2/12/2011 | 2/19/2011 | 2/26/2011 | 3/5/2011 | 3/12/2011 | 3/19/2011 | 3/26/2011 | 3/31/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending** | | | | | | | | | | | | | | |
| Opening Cash | $ 116,458.67 | $ 121,554.42 | $ 118,912.09 | $ 120,112.29 | $ 117,472.26 | $ 105,182.56 | $ 106,682.58 | $ 128,343.91 | $ 125,468.91 | $ 111,713.91 | $ 112,833.91 | $ 138,415.24 | $ 133,870.24 | $ 116,560.24 |
| **Anticipated Rental Income** | | | | | | | | | | | | | | |
| Zano's | | | | | | | | | | | | | | |
| Lakeview Cleaners | $ 11,014.00 | | | | | $ 11,014.00 | | | | $ 11,014.00 | | | | |
| Dr. Landis | $ 3,300.00 | | | | | $ 3,300.00 | | | | $ 3,300.00 | | | | |
| Help U Sell | $ 2,377.00 | | | | | $ 4,462.00 | | | | $ 4,462.00 | | | | |
| Furniture World | $ 2,150.00 | | | | | $ 2,150.00 | | | | $ 2,150.00 | | | | |
| Pak Mail | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 |
| Advanced Health & Physicians | $ 4,596.33 | | | | | $ 4,596.33 | | | | $ 4,596.33 | | | | |
| **Total Rental Income** | $ 141,319.09 | $ 123,254.42 | $ 120,112.29 | $ 117,472.26 | $ 106,682.58 | $ 133,774.91 | $ 129,643.91 | $ 127,788.91 | $ 112,313.91 | $ 138,415.24 | $ 138,415.24 | $ 151,110.24 | $ 122,290.24 | $ 121,130.24 |
| **Anticipated Expenses** | | | | | | | | | | | | | | |
| ASP Realty, Inc. (Easement Agreement with devel. paid monthly) | $ 2,286.00 | | | | $ 2,286.00 | | | | $ 2,286.00 | | | | | |
| Nicor (gas) | $ 350.00 | | | | $ 350.00 | | | | $ 350.00 | | | | | |
| Waste Management (Monthly Sweep) (Trash removal) | $ 115.00 | | | | $ 115.00 | | | | $ 115.00 | | | | | |
| One North Star (common area cleaning) | | $ 1,265.00 | | | | | | | | | | | | |
| City of Naperville (water and electric) | $ 1,060.00 | | | | $ 1,060.00 | | | | $ 1,060.00 | | | | | |
| Elberson Asset Management (management fee) | $ 1,300.00 | | | | | | | | | $ 1,300.00 | | | | |
| Utility Electric (snow removal) | | | | | | | $ 73.60 | | | | | | | |
| Valley Enterprises (snow removal / sidewalks) | | | | | | | | 16,000.00 | | | | 16,000.00 | | |
| Sprint Mechanical (HVAC repair) | $ 871.00 | $ 1,710.41 | | | | | | | | | | | | |
| Miller Cooper Roofing (leak repairs and inspection) | | | | | | $ 800.00 | | | | $ 800.00 | | | | |
| Ortiz Commercial (services waiting on estimate) | | | | | | | | | | | | | | |
| MPP Plumbing (annual fire, sprinkler inspection) | | | | | | | | | | | | | | |
| Administrative Fees (reimbursable to Elberson) | | 300.00 | | | 80.00 | 400.00 | 300.00 | | 80.00 | | 1,710.00 | | 80.00 | 350.00 |
| City of Naperville (annual fire alarm monitoring) | | | | 150.00 | | | | | | | | 150.00 | | |
| Insurance/Escrow | | | | 15,000.00 | | | | | | | | 16,000.00 | | |
| Tenant Environmental/Leasing Commission | | | | | | | | | | | | | | |
| Structural Reserve | | | | | | | | | | | | | | |
| **Total Expenses** | $ 15,063.07 | $ 4,642.54 | $ - | $ 15,239.00 | 4,631.68 | 3,155.00 | 16,875.60 | 80.60 | 4,511.06 | 2,865.60 | 16,150.00 | 80.00 | 350.00 |
| **Ending Cash** | $ 121,554.42 | $ 118,912.09 | $ 120,112.29 | $ 117,472.26 | 105,182.56 | 106,682.58 | 128,343.91 | 125,468.91 | 111,713.91 | 112,833.91 | 138,415.24 | 133,870.24 | 116,560.24 | 120,180.24 |

Cash balances do not include mortgage escrow balances held by lender noted below: